**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MICHAEL XU and DANIEL VAZ-POCAS, individually and on behalf of all others similarly situated, | Civil Action No. 1:20-cv-00510-SEG |
| | **CLASS ACTION** |
| Plaintiffs, | |
| v. | |
| PORSCHE CARS NORTH AMERICA, INC., a Delaware corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE JOINT EXPERT REPORT OF MARK A. GUSTAFSON AND BRUCE A. STROMBOM, PH.D.**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.    LEGAL STANDARD ...................................................................... 2

III.    GUSTAFSON AND STROMBOM'S REPORT DOES NOT ASSIST THE COURT IN DECIDING RULE 23'S REQUIREMENTS ................. 3

    A.    Gustafson and Strombom Provide Improper Legal Conclusions Regarding Whether Plaintiffs' Damages Model Fits with the Theory of Liability ............................................................... 3

    B.    Gustafson and Strombom's Opinions Regarding Manifestation of the Defect Are Disconnected from Plaintiffs' Theory of Liability .............................................................................. 7

    C.    Gustafson and Strombom Attempt to Impose Legal Requirements Concerning Injury that Do Not Exist .......................... 9

    D.    Gustafson and Strombom's Hypotheticals Regarding Double Recovery Ignore the Model and Evidence Presented, but Nonetheless, Present Classwide Issues ........................................... 10

IV.    CONCLUSION ............................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Braggs v. Dunn*,
   317 F.R.D. 634 (M.D. Ala. 2016)....................................................................3

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ...........................................................6, 8, 10

*City of Tuscaloosa v. Harcros Chems., Inc.*,
   158 F.3d 548 (11th Cir. 1998) .....................................................................2

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)......................................................................................1, 4

*Cook v. Sheriff of Monroe County*,
   402 F.3d 1092 (11th Cir. 2005) ....................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)....................................................................................2, 3

*McDowell v. Brown*,
   392 F.3d 1283 (11th Cir. 2004) ....................................................................2

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) .................................................................*passim*

*Ray v. Judicial Correction Servs.*,
   2017 U.S. Dist. LEXIS 154114 (N.D. Ala. Sept. 20, 2017)................................3

*U.S. v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ....................................................................2

*Williams v. Gerber Food Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008) .......................................................................9

**Rules**

Fed R. Civ. P. 23 ................................................................................1, 3

Fed R. Evid. 702 ...............................................................................2, 3

## I.      INTRODUCTION

The issue at class certification concerning damages is whether Plaintiffs have proposed a model for providing relief that fits with their classwide theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). This is a legal inquiry for the Court that is made in connection with determining whether the requirements of Rule 23 have been satisfied. The law is clear that Plaintiffs' average-cost-of-repair damages model fits with their theory of liability that Porsche violated the law by selling Class Vehicles with defective thermostat housings and coolant distributors that were not reflected in the sale price. *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 821 (9th Cir. 2019). The cost of replacing the defective components is an appropriate proxy for overpayment of the vehicle at the time of purchase. *Id.*

Nonetheless, in opposing Plaintiffs' motion for class certification, Porsche offers the expert report of economists Mark A. Gustafson and Bruce A. Strombom, Ph.D. ("Report") to argue that the cost-of-repair model does not fit with Plaintiffs' legal theory. Gustafson and Strombom ignore the legal theory actually alleged by Plaintiffs and attempt to impose legal requirements that do not exist. While Porsche's experts are free to critique Plaintiffs' damages model or propose an alternative model at trial, they cannot opine on the ultimate issue of whether the damages model fits with Plaintiffs' legal theory. It is clear from *Nguyen* that it fits.

Additionally, to the extent Porsche's experts critique Plaintiffs' damages model, those are merits questions for trial and are not appropriate at class certification.

## II.     LEGAL STANDARD

The burden is on the party offering the expert to show that the testimony is admissible under Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 n.10 (1993). For expert testimony to be admissible under Rule 702, the proponent of the testimony must show that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 563 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589).

Expert testimony is not helpful if it does not fit with the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). Additionally, an expert's opinions are not helpful if they are "nothing more than what lawyers for the parties can argue in closing arguments." *U.S. v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004). In general, "testifying experts may not offer legal conclusions." *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005).

2

Although at class certification Rule 702's requirements are "more relaxed," *Ray v. Judicial Correction Servs.*, 2017 U.S. Dist. LEXIS 154114, at *10 (N.D. Ala. Sept. 20, 2017) (citing *U.S. v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005)), where the court relies on expert testimony to find that Rule 23 has been met, "the court must conduct a *Daubert* analysis and conclude that the expert's opinions satisfy its standard." *Braggs v. Dunn*, 317 F.R.D. 634, 643 (M.D. Ala. 2016) (citing *Sher v. Raytheon Co.*, 419 Fed. Appx. 887, 890-91 (11th Cir. 2011)). The inquiry for class certification is focused on whether the expert report is admissible for purposes of assisting the Court in deciding Rule 23's requirements. *Braggs*, 317 F.R.D. at 643.

## III.    GUSTAFSON AND STROMBOM'S REPORT DOES NOT ASSIST THE COURT IN DECIDING RULE 23'S REQUIREMENTS

### A.    Gustafson and Strombom Provide Improper Legal Conclusions Regarding Whether Plaintiffs' Damages Model Fits with the Theory of Liability

Gustafson and Strombom opine that Plaintiffs' cost of repair damages model "is inconsistent with their theory of harm" because Plaintiffs' model does not determine how "the market value of the Class Vehicles at the point of sale would differ in response to alternative disclosure regarding the alleged defect." Report at 3-4, ¶¶ 43-48. According to Gustafson and Strombom, "[a]s a matter of economics, the diminution in market value of a product due to a defect is not the same as the cost to resolve the defect." *Id.*, ¶ 45.

Whether a damages model appropriately fits with Plaintiffs' alleged theory of liability is a legal question for the Court. *Nguyen*, 932 F.3d at 817; *Comcast*, 569 U.S. at 35. And the Ninth Circuit has already found, contrary to Gustafson and Strombom, that a cost-of-repair damages model is connected to the theory of liability in cases such as this one.

In *Nguyen*, plaintiff alleged that when he purchased a Nissan, he was unaware it suffered from a design defect in the vehicle's hydraulic clutch system. 932 F.3d at 813. The vehicle malfunctioned and Nissan initially repaired it under warranty. *Id.* at 815. Two years later, the same problem reoccurred but the vehicle was outside warranty and so plaintiff incurred out-of-pocket costs to repair it. *Id*. In moving for class certification, plaintiff in *Nguyen* proposed a damages model based on injury at the time of sale measured by the cost of repair:

> Assuming that class members would have either paid less than sticker price or not purchased a defective vehicle at all had the nature of the clutch system been divulged by Nissan, Plaintiff seeks "to recover the difference in value between the non-defective vehicles Nissan promised and the defective vehicles that were delivered based on the cost[] to replace the [defective part]."

*Id.*

Like Porsche does here, Nissan opposed the damages model by pointing to an expert who "'rejected the notion that average-cost-of-repair represented the amount that informed consumers would discount the price of the [Class] Vehicles.'" *Id*. at

816 (citation omitted). The district court agreed with Nissan, denying certification, and finding that damages must be measured at the time of purchase by the difference of what is represented and what is received. *Id*. The district court reasoned that because class members received value from the defective part by being able to drive their vehicles for thousands of miles before failure, the full cost of repair was an inappropriate measure of injury. *Id.*

On appeal, the Ninth Circuit reversed. The *Nguyen* court held that Nissan and the district court had "mischaracterized" the plaintiff's theory of liability. *Id*. at 819. Like Plaintiffs here, plaintiff's theory of liability in *Nguyen* was that the vehicles were defective at the time of sale because they contained a defective clutch design that needed to be repaired. In finding the cost-of-repair damages model to be appropriate, the Ninth Circuit explained:

> Plaintiff seeks to recover damages equaling the amount he purportedly overpaid in purchasing a vehicle with a defective clutch; he "is not seeking a full refund for the vehicle purchase, but for the cost of replacing [] a defective component, which is a proxy for [his] overpayment of the vehicle at the time of sale." Whether his proposed calculation of the replacement cost is accurate, whether the clutch is actually defective, and whether Nissan knew of the alleged defect are merits inquiries unrelated to class certification. For now it is sufficient that Plaintiff has demonstrated the nexus between his legal theory – that Nissan violated California law by selling vehicles with a defective clutch system that was not reflected in the sale price – and his damages model – the average cost of repair.

*Id*. at 821.

5

Just as Nissan's expert did in *Nguyen*, Porsche's experts here argue that Plaintiffs' damages model fails to account for value received by Class members in using the Class Vehicles. Report, ¶¶ 86-90. But value received after purchase is irrelevant to the value of the Class Vehicles at the time of purchase, which is the relevant inquiry. *Nguyen*, 932 F.3d at 820; *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 987 (11th Cir. 2016) (recognizing that a vehicle with defective seatbelts is worth less than one with operational seatbelts, which is reflected in the market price of the vehicle).

Gustafson and Strombom's hypothetical regarding real property highlights the fallacy in their opinions. *See* Report, ¶ 47. Gustafson and Strombom opine that if a piece of real property with a "fair market value" of $100,000 suffers a beetle infestation that wipes out timber on the property, resulting in a decline of $20,000 in value, the owner of the property would be entitled to the $20,000 in decline in value, not the $300,000 in cost to replant the timber. *Id.*

Besides the fact that real property is a doubtful applicable comparison to passenger vehicles, Plaintiffs' theory of liability is not that their vehicles have declined in market value because of the defect in the thermostat housing and coolant distributor. Their theory is that at the time of purchase, the purchase price did not accurately reflect the value due to the defect. Consistent with *Nguyen*, the cost of

repairing the defect that existed at the time of purchase is an appropriate proxy for the amount not reflected in the purchase price. To the extent Gustafson and Strombom disagree, their opinions should be excluded as contrary to the law, or at the very least, disregarded at this stage because they concern merits and not class certification.

### B.    Gustafson and Strombom's Opinions Regarding Manifestation of the Defect Are Disconnected from Plaintiffs' Theory of Liability

Gustafson and Strombom opine that Plaintiffs' damages model fails to "account for the fact that all class vehicles do not contain a defect that will manifest during their useful life." Report at 13. This exact argument was rejected by the *Nguyen* court as being disconnected from the theory of liability.

In *Nguyen*, Nissan and its expert argued that the cost-of-repair model improperly assumed the defect would manifest in all vehicles. 932 F.3d at 819. The *Nguyen* court rejected this argument, holding that plaintiff's theory of liability "is that the defect was inherent in each of the Class Vehicles at the time of purchase, regardless of when the defect manifested." *Id.* Requiring proof of manifestation would result in a "fundamental disconnect" from the plaintiff's theory of liability that "the alleged[] defective clutch is itself the injury, regardless of whether the faulty clutch caused performance issues." *Id.* at 822.

7

When a defect exists at the time of purchase it is itself the injury, affecting the purchase price of the vehicle. *Id.* at 820 (citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)); *see also Carriuolo*, 823 F.3d at 987. As a result, the damages model should be connected to the damage at the time of purchase and not manifestation of the defect.

Gustafson and Strombom attempt to impose a damages model that is unconnected to Plaintiffs' theory of liability. Like plaintiff in *Nguyen*, Plaintiffs here allege that all Class Vehicles are defective at the time of sale because Porsche manufactured them with defectively designed thermostat housings and coolant distributors that need to be repaired. Plaintiffs and Class members are all injured at the time of purchase because the prices they paid do not reflect the defective design. Accordingly, the damages model need not account for manifestation rates. To the extent Gustafson and Strombom are opining based on a different theory of liability, their opinions are not helpful to class certification and should be excluded.

Similarly, that consumers may expect to incur some "out-of-warranty" repairs has nothing to do with Plaintiffs' theory of liability. Report, ¶¶ 61-67. Plaintiffs allege that all Class members are injured at the time of purchase because the vehicles they purchased contained a design defect, which affected the price of the vehicles.

Expectations concerning repairs for normal wear and tear have nothing do with the design defect known to Porsche.

Additionally, Gustafson and Strombom's opinion that "Plaintiffs also do not consider that the manifestation of the Alleged Defect, if any, could occur during the warranty period" is false. Report, ¶ 42. Plaintiffs specifically exclude these vehicles from the Class and have proposed a way to exclude them from the aggregate damage award based on Porsche's own records.

### C.    Gustafson and Strombom Attempt to Impose Legal Requirements Concerning Injury that Do Not Exist

Gustafson and Strombom also view injury through the incorrect legal lens. They opine that Plaintiffs' damages model fails to account for whether consumers all had the same expectations regarding whether their vehicles would be defect free. Report, ¶¶ 49-60, 68-72. Under the applicable law, the correct inquiry is whether a reasonable consumer would be misled by Porsche's failure to disclose the defect. *Williams v. Gerber Food Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008). This is a classwide inquiry. Plaintiffs are not required to demonstrate the expectations of each individual Class member.[1]

---

[1]     Gustafson and Strombom also do not cite any evidence that consumer expectations actually vary regarding the design defect and the hypotheticals they raise are based on wear and tear of a vehicle, not a design defect that the manufacturer knows exists. *See* Report, ¶ 72. Gustafson and Strombom also raise

00193036

Because subjective perceptions of Class members are irrelevant, the relevant inquiry is not how Porsche's disclosure of the defect would affect the individual purchaser's perception of value, but rather, how disclosure would affect the market value of the vehicle for all consumers. *Carriuolo*, 823 F.3d at 986. Plaintiffs' damages model based on the cost-of-repair is appropriately connected to their theory that all Class members are injured upon their purchase of a defective Class Vehicle. Gustafson and Strombom's opinions concerning different theories of relief are irrelevant and not helpful.

### D.    Gustafson and Strombom's Hypotheticals Regarding Double Recovery Ignore the Model and Evidence Presented, but Nonetheless, Present Classwide Issues

Confusingly, Gustafson and Strombom identify categories of persons who they say will "not receive compensation under Plaintiffs' damages model" but "will, however, be counted when calculating 'aggregate' damages." Report, ¶¶ 30, 31; *see also id.*, ¶¶ 95-98. The categories of people Gustafson and Strombom identify are: (a) individuals who purchased Class Vehicles and resold them without incurring costs for repair; (b) individuals who leased Class Vehicles and returned them without incurring costs for repair; (c) individuals who purchased Class Vehicles that were

---

hypotheticals without proof, suggesting that some purchasers could have known of the defect. There is absolutely no evidence that any Class member knew of the defect as Porsche did not disclose it and instead, actively concealed it.

already repaired; and (d) individuals whose repairs were partially covered by Porsche's "goodwill" program. It is unclear whether Gustafson and Strombom believe these people are entitled to relief or will receive relief under Plaintiffs' damages model.

Contrary to Gustafson and Strombom's vague suggestion, Plaintiffs' model does not count the people in categories (a)-(c) discussed above. Like in *Nguyen*, the aggregate damages model here is based on the defective vehicles Porsche sold (not the number of purchasers) multiplied by the average cost of repair. Porsche's sales records identify the total number of defective vehicles sold by unique VIN. Ex. 41.[2] Porsche's warranty data also identifies vehicles by VIN that Porsche repaired under warranty, allowing for easy exclusion of these vehicles from the Class. Exs. 35, 40. The remaining defective vehicles it sold can then be multiplied by an average cost of repair calculated based on third-party data Porsche possess and uses. Ex. 42.

The aggregate damage amount is then allocated to Class members to repair their unrepaired vehicles or to reimburse for out-of-pocket costs already incurred. The model proposed by Plaintiffs compensates Class members who suffered injury

---

[2]    "Ex." refers to the exhibits submitted in support of Plaintiffs' Class Certification motion (ECF No. 86).

at the time of sale and who were not already compensated by Porsche or otherwise passed along the damage to a subsequent purchaser.

To the extent Gustafson and Strombom believe the people in categories (a)-(c) above should receive monetary relief, they provide no explanation why from an economic perspective or otherwise. Plaintiffs' theory of liability is that the purchase price of the Class Vehicles does not reflect the defect present. Those who purchased a Class Vehicle and sold it without incurring costs for repair passed that injury to the subsequent purchaser because the subsequent sale price also did not reflect the defect that still existed in the vehicle at the time of sale. If Gustafson and Strombom believe these people are entitled to monetary relief, they fail to explain why. Similarly, Gustafson and Strombom fail to explain how a purchaser of a used but repaired vehicle has suffered any injury.

Additionally, whether Gustafson and Strombom believe a different damages model more appropriately compensates particular Class members is a classwide merits issue. It has nothing do with whether Plaintiffs' damages model fit their theory of liability.

Gustafson and Strombom also critique Plaintiffs' damages model as failing to account for Porsche's payments under its discretionary "goodwill" program. This is a merits issue that is not relevant for class certification. Plaintiffs and Class members

12

who purchased defective vehicles and paid out of pocket for repairs are entitled to relief, regardless of whether Porsche also contributed towards their repairs. For class certification purposes, it presents a classwide issue – whether Porsche is entitled to an offset for its "goodwill" payments and whether that offset can be calculated on a classwide basis. Porsche's records contain information on the goodwill payments it made specific to each VIN. *See*, *e.g.*, ECF Nos. 77-13, 102-28, 102-29. Therefore, to the extent Porsche is legally entitled to an offset, that offset amount can be determined from Porsche's records and deducted from the overall aggregate classwide damage amount. This is a classwide issue and is not relevant to whether Plaintiffs' damages model fits their theory of liability.

## IV.    CONCLUSION

For the foregoing reasons, the Report of Gustafson and Strombom should be excluded for purposes of class certification.

Respectfully submitted,

Dated: July 11, 2022

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

Timothy G. Blood (*admitted pro hac vice*)
Paula R. Brown (*admitted pro hac vice*)
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, California 92101
Tel: (619) 338-1100
Fax: (619) 338-1101
*tblood@bholaw.com*
*pbrown@bholaw.com*

Dated: July 11. 2022

_____
                                          *s/ David J. Worley*
                                          DAVID J. WORLEY

David J. Worley, GA Bar No. 776665
Kristi McGregor
James Evangelista
**EVANGELISTA WORLEY LLC**
500 Sugar Mill Road, Suite 245A
Atlanta, Georgia 30350
Tel: (404) 205-8400
*david@ewlawllc.com*
*kristi@ewlawllc.com*
*jim@ewlawllc.com*

Ray P. Boucher (CA 115364)
Maria L. Weitz (CA 268100)
**BOUCHER LLP**
26100 Oxnard Street, Suite 600
Woodland Hills, California 91367
Tel: (818) 340-5400
Fax: (818) 340-5401
*ray@boucher.la*
*weitz@boucher.la*

*Attorneys for Plaintiffs*

00193036

## **LOCAL RULE 7.1D CERTIFICATE**

The undersigned hereby certifies that the foregoing has been formatted in Times New Roman font, 14-point type, which complies with the requirements of Local Rule 5.1.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 11, 2022, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE JOINT EXPERT REPORT OF MARK A. GUSTAFSON AND BRUCE A. STROMBOM, PH.D.** with the Clerk of the Court using the CM/ECF filing system, which effected service on the following counsel of record for Defendant Porsche Cars North America, Inc.

DLA PIPER LLP (US)
Christopher G. Campbell
Brendan G. Krasinski
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3450
christopher.campbell@dlapiper.com
brendan.krasinski@dlapiper.com

DLA PIPER LLP (US)
Matthew A. Goldberg
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
matthew.goldberg@dlapiper.com
timothy.pfenninger@dlapiper.com

LEE HONG DEGERMAN KANG
    & WAINEY
Anika Brunson
3501 Jamboree Road, Suite 6000
Newport Beach, CA 92660
Tel: 949/250-9954
949/250-9957 (fax)
anika.brunson@lhlaw.com

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD